OPINION OF THE COURT
Joan B. Lobis, J.
I am compelled to address an issue that up until recently has been of no pressing concern. Because of the current, heavy United States involvement in the Persian Gulf, the statutes designed to protect those serving in the military from the entry of default judgments have renewed relevance. For the reasons below, I find the affidavits submitted in support of requests for judgments of possession in these cases inadequate. Final judgment is therefore denied without prejudice to renewal upon a proper affidavit of nonmilitary service, unless petitioner shall file a bond of $10,000 for the tenant whose eviction is sought.
Under the United States Soldiers’ and Sailors’ Civil Relief Act (50 USC, Appendix § 520 [1]), the court may not enter a default judgment where the respondent has failed to appear unless petitioner provides an affidavit stating facts showing that the respondent is not in the Armed Services. Unless it appears that respondent is not in the military, the court may also require that petitioner post a bond conditioned to indemnify respondent against any loss or damage in the event that he or she is evicted which eviction is later vitiated. (United States Soldiers’ and Sailors’ Relief Act of 1940, 50 USC, Appendix § 501 et seq.)
The New York State Soldiers’ and Sailors’ Civil Relief Act was passed in 1951 and parallels the Federal act cited above. *256 (Military Law § 300 et seq.) The statute required that the affidavit supporting a default judgment be based on facts showing that the respondent was not in the military, and the investigation serving as the basis for the affidavit be conducted after the time to answer or appear had expired and within 20 days of judgment. An amendment to this act in 1987 deleted a specific reference to this requirement and in its place added language relieving an attorney from the duty to supply an attorney’s affidavit or affirmation. The provisions of the Federal act requiring a nonmilitary affidavit remain.
In addition, under both the State and Federal statutes, no dependent of a person in the active military may be evicted from a dwelling place except by court order, and even then only under certain circumstances. (50 USC, Appendix § 530; Military Law § 309.) This requirement has resulted in the necessary inclusion of a statement in the nonmilitary affidavits that no one in the dwelling from which eviction is sought is dependent on anyone active in the military.
Perhaps because of the infrequency of United States military endeavors involving the dispatch of large numbers of troops in recent years, the requirements of the statute have been given little scrutiny. A sampling of affidavits submitted with requests for the entry of default judgments show very little reliable factual content. Investigations are conducted in a haphazard manner, and apparently unreviewed affidavits are casually submitted by attorneys. Many of these are preprinted forms with blanks which are so inappropriately filled in as to make clear that they were never read, either by the deponent or submitting party. Many of these affidavits are careless at best, and fraudulent at worse. The vast majority, as those discussed below amply illustrate, fail to state sufficient facts upon which a reasonably trustworthy conclusion that a party is not in the military can be based.
The affidavit provided in Mill Rock Plaza v Lively is inadequate as to both the tenant and subtenants. Deponent states that she has "caused an investigation to be made to ascertain if Herbert Lively, 'John Doe’ and 'Jane Doe’ is in the military service, as defined in [the Act.]” Deponent goes on directly, without further facts or explanation, to say, "[F]rom this investigation I am convinced that 'Candida Gonzalez, John Doe’ and 'Jane Doe’ is not in the military service.” No facts whatsoever are provided regarding the nature of the investigation such as who was spoken to or when, nor what facts were learned from the investigation. The basis of deponent’s conclu *257 sion is a mystery. No information is provided about respondent in this paragraph, nor is any information provided as to who Candida Gonzalez is.
In the following paragraph however, deponent states that "I spoke to Joe Rudovic on September 10, 1990 and I was informed that Herbert Lively, 'John Doe’ and 'Jane Doe’ is not in the military service.” It is not clear whether this is the investigation referred to in the prior paragraph. No statement is provided to inform the court who Joe Rudovic is, or the basis of his knowledge. It is impossible for the court to evaluate its sufficiency without knowing whether the person spoken to was likely to know whether or not respondent was in the military. It is particularly difficult to imagine the basis of Mr. Rudovic’s knowledge of unnamed persons. If he had intimate enough knowledge of occupants of the apartment to know whether or not they were in the military, surely he would know their names.
Deponent in Tower 54 Assocs. v Atlan concluded that the respondent was not in the military based on the "belief’ of the doorman in the building. Beliefs of third parties do not constitute facts. While a superintendent, doorman or other building employee might well know details of a respondent’s life, such actual knowledge is not clear from this affidavit, and it cannot be assumed from his role as doorman. While building employees might know when a tenant is in the organized militia, it is not so clear that he or she is likely to know of a tenant’s reserve status. Over 19,000 reserves have been sent to the Gulf area, and the President has requested at least another 8,000. (NY Times, Real Estate, Easing Interest for Called Up Reservists, Sept. 16, 1990.) Therefore, without additional information regarding the basis of those beliefs, this affidavit does not "set * * * forth facts showing that the [respondent] is not in [the] military”. (50 USC § 520 [1].)
While the inquiries discussed above were made of persons other than the respondent, deponents in the following cases spoke directly to at least one of the respondents, but made conclusions — without explanation — about the military status of third parties. Even assuming that the deponent in Prominence Realty v Garduno/Veligdan who spoke directly to "Tony —present tenant in apt” spoke to T. Garduño, deponent concludes from this conversation that neither T. Garduño nor R. Veligdan is in the military. The basis of the conclusion regarding Veligdan is not stated. In addition, the deponent does not state when the investigation took place. In the *258 affidavits offered by petitioner in GSL Enters. v Purpura, GSL Enters. v Schurtz/Martin, and Matter of Estate of Goldman v Minio, deponent also claims to have spoken directly to a tenant, but as in Prominence Realty, deponent in all three cases concludes from his conversation with one tenant that a third party, either a roommate or undertenant, is not in the military. Without disclosing the facts of the inquiry about the third party, or even whether such an inquiry was made, I cannot assume this to have been a reliable conclusion. In addition, the deponent’s conversation in GSL Enters, v Purpura was more than six months prior to the date of the affidavit, and in GSL Enters. v Schurtz/Martin, the conversation was over one month prior to submission of the affidavit. Because the statute as applied requires that the investigation be contemporaneous with the judgment, these affidavits are deficient for that reason as well.
The affidavits in both Chelsea London Co. v Frederick and 338 E. 14th St. Realty Corp. v Reike fail to address the issue of other occupants and their possible dependency as required by section 530 of the Federal act and section 309 of the Military Law. There may be no other occupants of these apartments, and if there be other occupants, they may not be dependent on anyone in the military. But informing the court of those facts is the point of the affidavit, and it is not appropriate for me to make assumptions based on omissions.
It is hoped that the extensive discussion of the requirements of these statutes will be helpful to the Bar, and will ensure that the safeguards enacted by the Legislature to protect the individuals and families of our neighbors now serving in the Armed Forces are upheld.